Rosalind Bellin v. Zucker Rosalind Bellin v. Zucker May it please the Court, my name is Eitan Bellin and I am the counsel for the Appellant Rosalind Bellin. Your Honors, in this case the District Court erred when it refused to grant Ms. Bellin some re-judgment on the claim that she had a property interest in obtaining 24-hour personal care services, and this Court in its previous decision instructed the parties to go back down and get discovery on the issue of how personal care services are awarded in practice. There are no magic words, as there are in some other cases, that say if you do X, if you show A, B, C, and D, then you get 24 hours of care. Counsel, assume I agree with you on there being a property interest, I'm not saying I do, but I assume I do, how does the requirement of having some kind of process before she signs up for MLT or whatever the initials are, as against having that process immediately after violate what new process required, given Matthews v. Eldridge, and was that argued below? That's, in a way, going to the next step, but it's kind of funny that we're spending all this time trying to figure out what is property, which ain't easy, and not focusing on what is really the issue, which is whether the process was fair. Well, there was, well, in focusing, assuming that there is a property interest, Your Honor, there was no process. Some, and by the way, we're focusing... There was process exposed, not that long after. The moment she signs up, she gets an appeal, and she did, and she won. She didn't, Your Honor. What happened was, is the moment she signed up, we tried to appeal, and the MLTC said, no, you can't appeal a pre-sign-up determination, and they made her put in more, they made her, what they did, instead of allowing an appeal, is they made another determination, and then they awarded her, ultimately, from July 15th forward, 24-hour care, but not from June 1st. So you are saying that the violation between the time that she first applies, and when she actually gets, through a new judgment, of more, is sufficiently serious that if there is a property interest, that is a violation of procedural due process, even in the face of all that we look at in Matthews v. Eldridge, which is sometimes that an exposed appeal is sufficient? Your Honor, but this isn't exactly an exposed appeal, and I want to emphasize this. There is no remedy for the fact that she didn't get it. No, I am sorry, I misspoke. Not in the face of an exposed appeal, but of an exposed other procedure that brings about the same result. But it does not bring about the same result. Well, they don't give her her money back from before. No, they will not. She has no, the only, from the June 1st to June 15th, that period of time, has never been reviewed as to whether she's entitled, and she can't ask for compensation for that period of time, because all there is is the unreviewed and unreviewable, under the state statutes of decision, that she wasn't entitled to that care during that time. So are you talking about like a declaratory judgment that she was entitled to that care during that time, since she can't seek compensation for it? I mean, what are we talking about? What we're asking for is for her to be able to have a fair hearing that rules on whether she was entitled to 24-hour care during that initial period of time, between the time that they, between the time that, the date they actually awarded her care forward, which was around June 15th. That, frankly, may be significant enough if you have a class action, and very unlikely to be significant enough if it is only her case. Now you're also asking for a class action, and then the question is, is there commonality? That is, is it enough commonality of those who want 24-hour care, which may be a subclass that the lower court didn't look at, or commonality over the whole thing, which the court said, sorry, these are too different. Well, actually, the court did not rule on commonality. I know. What the court said was, because it can't prove a priori. I know what the court said, that it said you can't define, but frankly, that's silly. The issue is commonality. Well, we agree with that, Your Honor, with that definition of what happened. And in terms of commonality, two things. Number one, we argued below, and the court never ruled on, that the common issues are whether someone who has had an initial determination and wants to appeal has a right to appeal. And so you state that very broadly. I really have been focusing on someone who, through the application of objective factors, qualifies for 24-hour care, whether it's split or 24-hour regular. Because that, it seemed to me, there are objective factors that I could make a determination about someone's need for that based on toileting, ambulation, and so on. But the statement you just made now is much broader. Everyone's entitled to some earlier assessment. So this is my answer to that. We'd be satisfied if the court sent it back down on the issue of 24 hours and a class of 24 hours. As I said in the brief, the reason we didn't make that, ask to amend the class denial, is that the determination by the judge of the class denial was because, as Judge Calabresi pointed out, we couldn't prove a priori that we were entitled to the care before we had the hearing. So asking for a more limited class of 24 hours would have suffered, according to Judge Hellerstein, that same defect. Had he not ruled it that way, we would have asked for a more narrow class, and we intend to do so, as we pointed out in our brief. But he never even got to that. He erred at the first level. We need to have an opportunity to go back and say, look, at the very least for 24-hour cases, for cases where clients claim, Medicaid recipients claim they're entitled to 24 hours, they should be able to appeal. Well, I think we see those as really very different groups of people, and Judge Hellerstein was addressing your broader argument, and not focusing on those in which there's really a binary, do you need 24-hour care because you can't go to the bathroom on your own and you are bedridden, you know, after, of course, Medicaid eligibility is determined. And those seem capable of kind of ministerial determination. Right. I agree with you about that, Your Honor. I think the difficulty is that the way Judge Hellerstein ruled, we couldn't come back and ask for an amendment of the class. The same problem that he found with a more general class, i.e., that you had to prove a priori you were entitled to the relief you're requesting, applies to 24-hour people also. That's the error that he made. He never went on and said, oh, by the way, you know, it's not common because of X, Y, and Z. He made that error full stop, and we did not have an opportunity below. It would have been futile for us to ask for a more narrow class because the reason that he denied the class certification applies equally to 24-hour cases because he's asking us to a priori prove that everyone who's appealing is entitled to 24 hours, which, of course, is exactly what the appeal is for, what the prior hearing would be. And the Supreme Court has made it clear you can't require someone who's making a claim for due process to prove up front what they were asking the hearing for. So there was no way in the district court that we could have asked for that more narrow class, and if we had, the ruling would have been exactly the same because he said your fault in the class that I, by the way, defined, meaning Judge Hellerstein himself defined, was that you have to show a priori that you were given too few hours. That's impossible for anybody, and that's unassertainable. So I believe that Judge Hellerstein was absolutely correct when he found that class unassertainable, but by that particular reasoning, there was no way we could come back and say, well, all right, so why don't we talk about 24-hour classes? Because the same problem would be there. It just is a much quicker-to-resolve problem for the 24-hour care group than the others. And so forgive me for asking again, but so at this point, you are looking for what for Ms. Bellin? We're looking for a fair hearing to rule on whether she was entitled. A fair hearing now in 2025. Correct. To rule about whether in 2019 she was entitled between June 1 and some date, July 15? Actually, Your Honor, the evidence is all there anyway. As Your Honor pointed out in the first decision that Your Honor authored, the actual facts decided by the first fair hearing judge before he was overturned for legal reasons, that were challenging here, was that she actually qualified going back to June 1. So when I'm saying that she's entitled to a fair hearing, that may be sort of an exercise, but for the class, there are members of the class. We asked for a fair hearing because we thought we were correct. The state in the end said, you're not correct. You weren't entitled to a fair hearing. And the fact that you had one was a mistake made by the first ALJ. But for the class, what generally happens is because it's now clear that the state does not allow you to ask for fair hearings for these types of determinations, no one is asking for a fair hearing because you can't get it. We got it only because the first ALJ actually agreed with us. We think he was right. Otherwise, we wouldn't be here. But the fact of the matter is that the relief requested for the class is that everybody got the opportunity to have a fair hearing on the initial determination of the number of hours when they were denied. So if she had that, why is she a class representative, an adequate class representative now? Why is that a matter of movement? Well, first of all, Your Honor, that wasn't an issue that was raised below. But I'll answer that. The answer is she was. She's an adequate class representative because she is still suffering harm. She's had no ruling that the state of New York recognizes, right? No ruling that says, hey, you're entitled to 24-hour care from June 1st onward. She's entitled to get that ruling. As we stand here now, the state has said, no, you don't get a ruling on that. We already ruled that you get from June 15th onward, you get this care. But as to before that, too bad. So sad is my civil procedure. So the answer to Judge Carney's question is she's an adequate representative because she has harm from June 1st to June 15th. That's absolutely correct, Your Honor. That's absolutely correct. In fact, what I want to point out here also is that although they retroactively awarded her care back to June 15th, it actually took six weeks until the state actually made that ruling. So she was without Medicaid-funded personal care services for six weeks through July. Well, I thought she received services because the family members were paying. The family, yes. So she wasn't without services. She was without the state paying for it. Yes, she was without the state paying. And similarly in Becerra, the objection was raised as to some of the class members. Well, they weren't really harmed because their care was paid for by Medicare Part B and not Part A. And this Court said if you have a different wrong form of payment, that's a harm. And in fact ‑‑ Counsel, you're way over time. But let me just make sure there are no further questions. But you do have two minutes left for rebuttal.  Okay. Thank you.  May it please the Court. Mark Grubb for the Commissioner of the New York State Department of Health. This Court remanded this case for discovery to determine whether the regulatory regime in practice mandates a particular number of hours of personal care services. After extensive discovery, plaintiffs do not purport to identify any non‑public guidance materials or any evidence about rote application of screening tools that mandate any particular result. Instead, discovery confirmed that MLTC plans have substantial discretion over proposed plans. Wait a second. Do you take that position as to people who require 24‑hour day care? Because my reading is that the community health assessment looks at maybe five factors. Toileting, help ambulating, help maybe feeding. I don't have the list quite in front of me. But they're very binary. And it can be quickly determined by a non‑expert individual whether someone qualifies for 24‑hour day services. Is that not your understanding of the regulations? That's not my understanding. First of all, the community health assessment is a tool that's for initial primarily used for screening for eligibility and not the particular amount. It's the starting point, but the outputs are then Why is the decision that is made after the person has signed up a decision which you allow to have appealed while the one before is not? That is, how is it different in terms of discretion? Because if there is discretion, then there would seem to be discretion after a person has signed up. And then that wouldn't be appealed either. Now, of course, you may be saying we're letting it be appealed just as a matter of niceness. But it's a bit odd. Well, there's a couple reasons. The reason that there is the appeal after one has enrolled is because it's an adverse determination and under Medicaid, then appeal rights kick in. Well, but this is an adverse determination earlier. I mean, the determination is essentially the same. And the issue that has been posed to us is does the person have sufficiently a property right so that that can be treated as not just discretionary, but something that she has a right. And I'm still trying to see the difference. Now, as I said, despite the fact that it isn't really an appeal later but a new judgment and so on, I may have problems as to the adequacy of process. But on the question of what the person's rights are, I don't see it. Well, there's another critical distinction, which is at the pre-enrollment stage, a potential enrollee can solicit multiple offers, including up to 20 offers in New York City. So there's competition, and that serves as additional process. That may go to whether that process is adequate. Again, that may well go to whether that process is adequate. But I don't see how it goes to what her rights are. But if she can have 1,000 things, if she doesn't have a property interest, then it doesn't matter. And it can be only one if she has a property interest, and then that's it. I think I might understand what the response is that the post-enrollment process is not contingent on or a result of it being any property interest. It's a statutory regulatory entitlement. So you're saying we're giving that out of the kindness of our heart, not out of a property interest. Those are not the words that I would use. But the state of New York has provided a robust process. And I would like to note that personal care services are not mandated under the federal Medicaid regime, and New York has chosen to provide personal care services. Do you understand that if we were to rule for you on that ground, we are in effect saying to New York, hey, if you want to cut this out at the second stage, you can do so. And I'm kind of reluctant to have our court do something which could be read that way. Well, this court does have other options. It can rule under the Matthews v. Eldridge test that there is adequate process. And I was getting to that point, I think, just as we got to this question, which is that, and I can walk through some of it, but first of all, that process includes an initial eligibility determination by an independent entity that has no financial stake. Then once one is determined eligible, there is an ability to shop around to multiple plans who have an economic incentive to have enrollees, and they're economically incentivized to take on enrollees with more complicated issues. Then once, and I also separately note that I understand that there might be concerns about people with urgent needs, and there's a separate process to deal with that that we note in our brief where someone can go to the local social services district. And under the process that's being challenged here, there's always inherently some gap because enrollment does not kick in until the first day of the month. If there's an urgent need- Has the district court discussed this Matthew v. Eldridge possibility? That is, you know, it's something we could do with all the difficulties the other side has said, but now the argument isn't so much, well, it's being done after. The argument is that given the number of people whom the person can go to, that is process enough. And that's an interesting argument. I wonder whether it's something we should approach in the first instance or whether it's something that the district court, this long-suffering district court, might have to deal with first. Well, I think this court certainly has discretion over how it would handle that, but I think in the interest of efficiency, the parties have been through discovery. The record has been developed, and respectfully, we believe that the Matthews v. Eldridge balancing test is not a close call in this decision that would benefit from district court reasoning because we believe that all factors weigh in favor of the state. Even though this court has held that the alternate procedures, which I've started discussing but didn't finish discussing, those alone can be enough. But certainly in the Capps v. Wing decision, the court noted that certainly when there's burden to the state and the procedures are unlikely to improve the processes materially, the court is unlikely to find a due process violation. Could you address, please, the effect of the state's regulatory changes after the remand decision came down? Sure. I don't think that they have a material effect on the legal issues. I think it's helpful to understand the background of how things work. I would say one change that is material is that there's an extra level of review for individuals whose plan of care require more than 12 hours. So there's an additional process in addition to the four or five or six I've already discussed that came into play after the 2022 regulations at the pre-enrollment stage, looking at different plans of care. And separately, heading back to my attempt to draw a distinction between people who might need seven hours a week, ten hours a week, and those who need a 24-hour either live and aid or split shift, my understanding is that if you need day-long, including nighttime assistance with walking, transferring, toileting, turning and positioning or feeding, that you, under the current regime in New York, you are entitled to 24-hour care. Is that correct? That's not quite correct. That regulation goes to the type of 24-hour care, whether it's going to be continuous or split shift, whether someone can get five hours of sleep. So that's the inquiry that comes into play after someone has been determined eligible for 24-hour care. If I could just, though, make one comment I would like to make, which I understand from our personal experiences, this does seem like it might be a very objective inquiry based on personal experiences and people that we may know. Or based on the articulated standards. My point is that the nurse assessors look at a number of very specific things, including the type of incontinence, whether it's bowel or urinary incontinence, the type of diapers that might be more cost-effective or might not provide enough dignity for the enrollee, whether there can be environmental modifications, whether a commode can be used. And so all of these things that might at first blush seem like an objective inquiry actually involve trained expertise, applying both their skilled medical judgment and also their observations about the individuals and the availability of other supports and the environmental modification. So for that reason, we do not think there's a property interest. I understand that I'm over, and I would like to make— Your opposing counsel went over by well over four minutes. Okay. So as long as you—I'll give you the same amount of time, but then cut you off after that. Okay. I do want to turn back to one factor of the Matthews v. Eldridge test that we did not discuss, which was—well, I didn't finish all the processes, so why don't I do that first? So we talked about pre-enrollment, post-enrollment. As you understand, there are also—on day one, someone can seek more services, and that will normally be decided within 14 days. If there's an urgent need, that's decided with—can be decided within 72 hours. But the opposing side says this deals adequately with future, but does the person get something by the second review, which covers a mistake made earlier? And that's very different because, you know, in most of the situations, for under Matthews v. Eldridge, we say ex post is adequate. It's because ex post covers ex ante. And if a secondary thing were a later appeal which said you get your money back, then that would be a very different one from the one they're opposing. Well, Matthews v. Eldridge specifically talks about, you know, length of deprivation being a consideration, and not all deprivations considered under Matthews v. Eldridge are ones where there can be retroactive benefits. No, no. I'm not saying it isn't possible. Right. I'm just saying it's a different thing, and you were just saying they get it after, but that's just the first step. Right. And I understand that under Matthews I'm trying to cabin as a factor that weighs. It's more limited than the other types of interests that this court and the Supreme Court have found under Matthews v. Eldridge. Caps v. Wing involve the sort of complete deprivation of benefits from home heating. Barrows also that there's no opportunity to appeal the Medicare Part A funding. But turning to the burden to the state, I think what's particularly important to note is that in conjunction with the process the state has already provided, giving individuals the opportunity to solicit multiple offers, allowing an appeal process would be very burdensome for the state because an individual could appeal multiple pre-enrollment offers. It raises the possibility of inconsistent determinations, and it's more complicated than the other types of administrative processes this court has required. So what's an individual to do without the information needed to make a decision about whether she's going to get adequate care in the competing programs? How is that a competition? Well, because there are different multidisciplinary teams from different plans, so there's multiple people at each plan assessing their own. Yeah, but how realistic is it that somebody who is ill is going to go to 12 different providers and say, which one gives me the best? I mean, if it really were easy, you know, like a question of what bank pays me how much or something of that sort, that multiple choices may amount to something, but I have a little problem understanding how multiple choices applies in practice. Well, I think in this case the plaintiff solicited at least three offers. They have not developed any evidence that this market does not function as it was intended. To be sure, some policy, you could probably devise some other policy than what the New York State devised. I am more worried about somebody who is poor. I think obviously Miss Mellon is whatever. She knows what she's doing and she's well represented. I don't know if the name similarity tells us something, but obviously. But I'm worried not about her. I'm worried about some relatively poor person who is going up and whether that person can practically look at more than one. Well, that might be a challenge to one of the five or six procedures that I've talked about. I understand. Your point of appeal being difficult because there are more is a very good point. And I'm just questioning how much there are. Thank you. Thank you, counsel. Just want to make a few quick points. As to the multiple offers, this court already rejected that as a basis for saying that they were giving due process in their first opinion. Couldn't have been clearer. So I'll just say that that's already been rejected by the court. Second of all, in terms of damages suffered by Miss Mellon, A, as I said, she didn't get it for six weeks. But B, this court has repeatedly held that a denial of Medicaid is irreparable harm. Any improper denial is irreparable harm. This court held that in 1980. This court held that in a non-published opinion in 2015. And the Supreme Court pointed out all the way back in Goldberg that if someone needs public services and they're not getting them, they have a brutal need. So in terms of the damages, the damages are clear. I mean, if you have to go that route, this court's cases and the Supreme Court cases make that clear. In terms of the discretion and having to consider many factors, that was true in Becerra. In fact, it was specifically recognized that the doctor in that case, doctors, the regulation said there were complex factors. The question is not whether the medical discretion is complex. The question is whether the state has set forth standards and whether the satisfaction of those standards requires the provision of the care. And we've submitted to you that the state has set forth the standards through the fair hearings and through the transmittals and things of that nature. And those same things show that it's mandatory. There are 108 cases we provided. You can read all of them. I'll show you. Your clerks may have. They repeatedly reverse when they don't, when the person is shown that they have all these needs and they're not, and they weren't taken into account. If there are no questions, I'll rest on my greetings. Thank you. Thank you to both sides. Well argued. We'll take the matter under advisement. Very well argued. Thank you both.